MARIA TATAR *vs.* STEPHEN SCHUKER.

No. 90-P-536.

Middlesex. September 12, 1991. - November 14, 1991.

Present: KASS, GILLERMAN, & LAURENCE, JJ.

*Divorce and Separation*, Division of property.

In the circumstances of a divorce action the judge properly transferred the
   marital home to the wife and ordered postponed the husband's receipt
   of a division of marital assets until sale of the house, remarriage of the
   wife or emancipation of the two minor children, whichever first oc-
   curred. [535-536]
In the circumstances of a divorce action the judge properly declined to
   make a distribution of the wife's securities, where present division of
   her only substantial liquid assets would not have been in the best inter-
   ests of the parties. [536-538]
A divorce matter was remanded for further findings to resolve material
   questions with regard to apparent discrepancies in the financial calcula-
   tion of the property division. [538-539]

COMPLAINT for divorce filed in the Middlesex Division of
the Probate and Family Court Department on August 3,
1988.

The case was heard by *Edward M. Ginsburg*, J.

*Regina Healy* for Stephen Schuker.

*Janice Bassil* for Maria Tatar.

GILLERMAN, J. The husband appeals from a judgment of
divorce, bringing forward three narrow issues arising out of
the judge's division of property under G. L. c. 208, § 34:
(1) Was the judge in error by failing to make a present as-
signment to the husband of certain liquid assets belonging to
the wife? (2) Did the judge abuse his discretion by deferring
the husband's receipt of marital property? (3) Were there
discrepancies in the figures used to calculate the division of
property?

Shortly following a three-day trial, the judge entered his thorough "Findings of Fact and Conclusions of Law." An equally thoughtful "Amended Judgment of Divorce Nisi" was entered October 11, 1989. So far as material to this appeal, the judge awarded each party approximately one-half of the marital assets (a decision the husband does not contest). To that end, and in order to preserve a familiar home for the two children,[1] the judge ordered the transfer of the marital home to the wife.[2] Because the judge found that the marital home had a very substantial market value (in excess of one million dollars as of the time of the trial), the even split between the parties could be accomplished only by ordering the wife to pay the husband $240,000, but that amount, with interest compounded annually at the rate of six percent per annum, would not fall due until the earliest to occur of (i) the sale of the house, (ii) the remarriage of the wife, or (iii) the emancipation of the two children of the marriage. The particular rub is that the judge left the wife with various additional assets, including securities having a market value of $162,000 (as of July, 1989). Thus, the husband argues, the $240,000 future payment should have been reduced by a present transfer of at least the wife's securities, and that the judge's failure to do so was an error of law. In any event, the husband argues, the potentially long deferral (at the time of the trial the two children of the marriage were ages two and five), combined with the economic terms of that deferral, were an abuse of the judge's discretion.

We conclude the judge was within his authority in transferring the marital home to the wife and postponing payment of marital property, in some reasonable measure, to a later

---

[1]The judge found that if the marital home were sold, the disruption to the wife and children "would be great," the adverse tax implications would be serious, and the husband's move "will be less disruptive for him than alternative arrangements would be for the . . . [wife] and minor children."

[2]It appears that the husband vacated the marital home in November, 1989, and the transfer of the house to the wife is not an issue on appeal.

date.[3] In *Downing* v. *Downing*, 12 Mass. App. Ct. 968 (1981), which involved similar circumstances, we held that, "the judge reasonably could determine that it was sensible to place title to the marital home in the wife who would need it during the minority of the couple's children, and to give to the husband only a money payment when the conditions for such a payment are satisfied" [i.e. within one year after the sale of the house or upon the emancipation of the children]. *Id*. at 969. See *Hartog* v. *Hartog*, 27 Mass. App. Ct. 124, 128 (1989) ("A provision allowing minor children to remain in the marital home is a traditional child support provision." Modification to a divorce judgment extended the use of the marital home by the wife and children for an additional period of eight years).

The husband relies on *Dewan* v. *Dewan*, 399 Mass. 754 (1987), and *Hanify* v. *Hanify*, 403 Mass. 184 (1988), for the proposition that a present division of property is required as matter of law to the extent that the assets are liquid and can be easily valued. Since there was no finding, the argument goes, that the valuation of the wife's securities was uncertain, or that the distribution of her securities to the husband was impractical, it was an error of law for the judge not to have ordered, at the very least,[4] an assignment of the securities to the husband.

*Dewan* involved the division of a spouse's future benefits from a pension plan; *Hanify* involved the division of the future benefits, if any, from pending lawsuits. *Dewan* recognizes a preference for an immediate settlement of future pension rights because "it avoids continued strife and uncertainty between the parties." *Dewan* at 757. *Hanify*, af-

---

[3]There is no contention here that the judge did not fairly consider all the factors relevant under § 34, or that he considered irrelevant matters, or that he did not adequately state the reasons for his conclusions. See *Redding* v. *Redding*, 398 Mass. 102, 107 (1986), citing *Ross* v. *Ross*, 385 Mass. 30, 37-38 (1982).

[4]The husband also argued for a distribution of the balance of $78,000 (to be financed by a second mortgage on the marital home) — an argument we need not discuss in view of our opinion rejecting his argument for a distribution of the wife's securities.

ter holding that a pending lawsuit constitutes part of the marital estate, approved the "when and if received" order of the trial judge because it allowed the parties to share the risk of loss or gain, rather than needlessly subjecting the parties to the possibility of an unfair result. What is common to both cases is simply the common sense analysis of what is in the best interest of the parties, given all the relevant circumstances — an analysis that requires sound judgment and the wise exercise of discretion.

We see no basis for concluding that the judge's order was either not sound or not wise. He put it this way at a hearing on October 11, 1989: "In the best of all possible worlds, he [the husband] would get the money. Now, to pay him his present interest there is no way I can do that without impacting adversely on the children. As so often happens in a divorce context, the husband doesn't get his interest for some time."

No doubt the judge had in mind his unchallenged findings that, deprived of her securities, the wife's sole liquid assets would have been $1,550 in cash, while her debts (exclusive of mortgage obligations) would be $100,965. The precariousness of that financial position is obvious.[5] The husband, on the other hand, was left with virtually no debt (exclusive of mortgage obligations), cash of $2,320, and securities of $149,755.[6]

We note also that the $240,000 obligation is well secured by a mortgage on the marital home,[7] and that the six percent interest rate compounded annually will double the principal every eleven years and seven months, approximately. Finally, we add the fact that the judge found that the wife's opportunity for the future acquisition of assets was limited to her

---

[5]Even though the value of the wife's securities exceed her debts, the judge could reasonably have concluded that the excess was a necessary reserve against unforeseeable contingencies.

[6]We note also that the husband was, at the time of the trial, a tenured professor of history at Brandeis University and a frequent recipient of research grants and fellowships.

[7]The judge found that the outstanding first mortgage was $166,796, leaving an equity of over $900,000 to secure the $240,000 obligation.

ability to invest the monies given to her in the division of assets, namely, her portfolio of securities. The judge provided an equal opportunity to the husband.

We conclude that the judge acted within his discretion in not ordering the present assignment of the wife's securities to the husband. It follows, too, that the judge did not abuse his discretion in deferring the husband's receipt of a portion of his share of the marital property until the occurrence of a specified event rationally related to the circumstances of the parties. Contrast *Yee* v. *Yee*, 23 Mass. App. Ct. 483, 484-485 (1987) (realization of husband's share of proceeds of sale of house contingent on wife's subjective determination).

Finally, the husband raises material questions with regard to the judge's calculations, namely: (i) the judge denied the wife's motion for counsel fees in the amount of $31,465.37, while including that amount in the wife's debts and thus as an offset against the wife's share of marital property. The effect of doing so is to require the husband to pay half the · fees he was previously relieved from paying. Was that the result intended by the judge? (ii) There is an inconsistency between the Fidelity Magellan/IRA listed in the wife's financial statement at $4,145.41 and the documentation underlying that item which shows the account to be $11,190.57. The judge adopted the figure in the financial statement without explanation. Was that an error? (iii) The wife's financial statement, adopted by the judge, shows the Fidelity brokerage account at $88,115.28. Documentation supporting that item, however, shows $103,814.84. Did the judge intend to adopt the lower figure?

The wife offers no reconciliation of these apparent discrepancies, and the aggregate of these items is material to the financial outcome of the division of property. Further findings are required. The judgment insofar as it concerns the division of property is vacated; in all other respects it is affirmed. The case is remanded to the trial judge for the lim-

ited purpose of responding to the identified questions with supplementation of the judgment to follow.

*So ordered.*